■ PHILLIP J. GOLDBERG, Respondent, v KZ 72ND et al., Appellants.—Order of the Supreme Court, New York County (Carol E. Huff, J.), entered June 11, 1990, which, *inter alia,* denied defendants' motion to dismiss, unanimously modified, upon the law and the facts, to grant defendants' motion as to the third cause of action, and otherwise affirmed, without costs.

This action arises out of purchase agreements for the sale of

two residential units (44C and 44F) at 254 East 72nd Street in Manhattan and a rider to each of these contracts for the purchase of two parking spaces (permanent exclusive easements). The purchase price for unit 44C was $666,000 and for unit 44F was $276,000. The parking spaces were $50,000 each. The plaintiff-purchaser made a $103,000 down payment.* Of this amount, $10,000 was applicable to the parking spaces.

Upon the refusal of the seller, defendant KZ 72nd (KZ), to close, plaintiff commenced this lawsuit. Defendant Arthur Zeckendorf (Zeckendorf) is alleged to be the controlling shareholder in WZ 72nd Corp. (general partner of KZ) and the controlling force behind the selling agent, Manhattan Marketing Inc. (Manhattan). Defendant Milbank, Tweed, Hadley and McCloy (Milbank) holds the plaintiff's down payment in escrow. The first cause of action seeks specific performance of the purchase agreements pertaining to the residential units. Damages for breach of contract as to the residential units are sought in the second cause of action. These causes of action have been asserted against KZ only. The third cause of action, against KZ and Zeckendorf, seeks damages for fraud in the inducement to contract for the parking spaces. The fourth cause of action is against Milbank, and it seeks return of the down payment plus interest.

In lieu of answering, defendants filed a motion for an order, *inter alia,* pursuant to CPLR 3211 (a) (1) and (7) dismissing the complaint. The IAS court denied the motion. We are satisfied that a cause of action has been pleaded and exists with respect to the first, second and fourth causes of action and, therefore, affirm the order of the IAS court to that extent. *(See, Guggenheimer v Ginzburg,* 43 NY2d 268 [1977].)

With respect to the third cause of action for fraud, we reverse and grant dismissal in its entirety. The complaint alleges fraud in the inducement to contract for the parking spaces in that material misrepresentations were made concerning the availability to plaintiff of two designated parking spaces to which he would have direct access. Plaintiff wanted the spaces to accommodate a limousine and another automobile and access without use of valet services. Plaintiff was allegedly assured of this despite restrictions in the Offering Plan to the contrary. In addition, the purchase agreements specifically stated that the Offering Plan had been received,

---

* Inexplicably, the complaint alleges that the total purchase price for the residential units and parking spaces was $1,038,000 (not $1,042,000) and that the $103,000 deposit constituted a 10% down payment.

read and understood by the plaintiff to be a part of the purchase agreements. The purchase agreements also provided that time was of the essence in the fulfillment of the plaintiff's obligations. Full payment would be due at the closing, which would be scheduled by the defendants, after obtaining a temporary certificate of occupancy. The purchase agreements further provided that if the closing was postponed at the request of the plaintiff, plaintiff would be liable for interest and adjustments from the originally scheduled closing date.

Four months after the purchase agreements and riders were executed, plaintiff was advised that under the Offering Plan, each parking space was unassigned and in an area designated for valet parking. Thereafter, plaintiff learned that the garage was unsuitable for the parking of a limousine or any full-sized automobile and demanded rescission of the riders to the purchase agreements. Without responding to this demand, KZ scheduled the closing for July 12, 1989. Plaintiff informed KZ that he would be ready to close on that date provided the units were completed and passed inspection. The complaint states that the plaintiff refused to close on July 12, 1989 because the parking space issue was unresolved and the units were incomplete. Subsequent to the July closing date, KZ and Zeckendorf released plaintiff from any obligations under the riders to the purchase agreements. A second closing was aborted on August 24, 1989 because the defendants demanded that the plaintiff pay interest and adjustments as of the July closing date. By virtue of plaintiff's willingness to close if his obligations under the riders were released and defendants' assent to that demand, plaintiff waived any claim that misrepresentations as to the parking spaces induced his purchase of the parking spaces. (*Lumber Indus. v Woodlawn Furniture Corp.,* 26 AD2d 924 [1st Dept 1966].)

Moreover, plaintiff's reliance upon the alleged misrepresentations as to the parking spaces was not justified. The purchase agreements, which incorporated the Offering Plan, contained a clause specifically disclaiming any reliance by the plaintiff upon "any statement, whether written or oral made by you [defendants] or any other person except those that are contained in this Agreement or in the [Offering] plan." This disclaimer, coupled with the disclosure of the operative facts, which are not disputed, is sufficiently specific to bar reliance upon the alleged oral misrepresentations. (*Danann Realty Corp. v Harris,* 5 NY2d 317 [1959]; *Wittenberg v Robinov,* 9 NY2d 261 [1961].) In addition, this fraud action cannot be maintained against Zeckendorf because there is no allegation

or proof that he personally made the alleged misrepresentations, ratified or profited from them. *(See, Ackerman v Vertical Club Corp.,* 94 AD2d 665 [1st Dept 1983].) Accordingly, the third cause of action is dismissed. Concur—Sullivan, J. P., Milonas, Rosenberger, Wallach and Smith, JJ.